IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

LADONNA LYNN SMITH,                )
                                   )
                Plaintiff,         )
                                   )
v.                                 )   Case No. CIV-23-028-JAR
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
                Defendant.         )

## OPINION AND ORDER

Plaintiff Ladonna Lynn Smith (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled.  For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries:   first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 53 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as an accounting clerk, inventory clerk, shipping clerk, bookkeeper, and maintenance scheduler. Claimant

3

alleges an inability to work beginning August 18, 2019 due to limitations resulting from arthritis, depression, back injury, heart issues, numb legs, and anxiety.

## Procedural History

On January 2, 2020, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 19, 2021, Administrative Law Judge ("ALJ") Jonathan P. Blucher conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On October 29, 2021, the ALJ issued an unfavorable decision. On February 8, 2022, the Appeals Council remanded the case back to the ALJ with instructions.

On July 1, 2022, ALJ Mark M. Swayze conducted an additional administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On July 22, 2022, the ALJ once again issued an unfavorable decision. On December 5, 2022, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§

4

404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that, while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform her past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ erred in rejecting Claimant's self-described symptoms and limitations.

### Consideration of Claimant's Subjective Symptoms

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease, degenerative joint disease of the knees, peripheral neuropathy, carpal tunnel syndrome, and obesity. (Tr. 30). The ALJ found none of Claimant's conditions met a listing. (Tr. 33-35). As a result of the limitations caused by her severe impairments, Claimant was found to retain the residual functional capacity to perform light work. In so doing, the ALJ found Claimant could stand and/or walk for up to four hours cumulatively in an eight hour workday; Claimant requires an option to alternate sitting or standing position at 30 minute intervals throughout the workday without

5

breaking task; limited to occasional stooping kneeling, crouching, crawling, and climbing of ramps or stairs; Claimant could never climb ladders, ropes, or scaffolds; Claimant could frequently handle, finger, and reach in all directions bilaterally; and was limited to occasional feeling. (Tr. 35).

After consultation with a vocational expert, the ALJ determined Claimant could perform her past relevant work as an accounting clerk. (Tr. 41). The ALJ also determined at step five that Claimant retained the RFC to perform the representative jobs of small product assembler and electrical accessories assembler. (Tr. 43). Because of these findings, the ALJ concluded that Claimant had not been under a disability from August 18, 2019 through the date of the decision. (Tr. 44).

Claimant contends the ALJ improperly rejected her subjective symptoms, or as Claimant couches the issue, her self-described limitations.

Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. Soc. Sec. R. 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016) (superseding Soc. Sec. R. 96-7p, *Policy*

*Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy, which applies to the case at bar, is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. R. 16-3p at *1; *see also* <u>Sonnenfeld v. Comm'r, Soc. Sec. Admin.</u>, 2018 WL 1556262, at *5 (D. Colo. Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis"). In place of "credibility," the Social Security Administration now utilizes the term "consistency." Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Soc. Sec. R. 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence

7

and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.; *see also* <u>Sonnenfeld</u>, 2018 WL 1556262, at *5 (explaining that Soc. Sec. R. 16-3p replaces a credibility assessment with an "assessment of the *consistency* of a claimant's statement with the record in its entirety").

Under the new policy, the Social Security Administration continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .

Soc. Sec. R. 16-3p at *2.

With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is

present." Id. at *3.   In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)). Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the

claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. Keyes-Zachary, 695 F.3d at 1166–67; *see also* Soc. Sec. R. 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Kepler, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the Social Security Administration's policy interpretation regarding what an ALJ must include in his written decision. *See* Soc. Sec. R. 16-3p at *9 ("The [ALJ's] determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of

the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." Keyes-Zachary, 695 F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

At the administrative hearing, Claimant discussed her alleged limitations. She stated that she stopped working in 2019 because she could only sit in her chair for a few minutes. She was driving for 45 minutes and it was causing lower back pain and numbness in her right leg. (Tr. 100-01). She has not had surgery on her back but she has had physical therapy. (Tr. 101).

Claimant had carpal tunnel and arthritis in both hands which hurt so bad that she can't sleep. She cannot write a letter or brush her hair due to pain. She cannot grip. She also experiences numbness. She has had surgery on both hands. Claimant still experiences swelling and pain. Id.

Claimant had knee surgery for pain. She had shots in both knees which caused her to hyperextend them. She had surgery on the inner and outer meniscus on the right knee. (Tr. 102). Claimant takes an anti-inflammatory but no other medication for pain management. Id.

Claimant also experiences severe depression and anxiety. She

11

takes three medications for the condition.  She is attended by a doctor, counselor, and health awareness specialist at Carl Albert Center.  She has difficulty going out in public to dine or to family events.  (Tr. 103).

Claimant states that she can only stand for 15 to 20 minutes before her back starts hurting and her leg goes numb.  She cannot walk to shop.  She states that she can lift five pounds, but it hurts her hands, wrists, and back.  She has to have help from her daughter to do her hair.  Claimant cannot stand for long periods to cook dinner.  She testified that it hurts to sit on the bed and fold laundry – she has to stop and lay down.  (Tr. 104).

Claimant completed a "Function Report" on January 6, 2021. She provided that pain and numbness occurs in her hands, back, and legs with almost any activity.  (Tr. 499-506).  It also reflects that she drives a car, shops in local stores with difficulty walking, manages her finances.  (Tr. 502).  Claimant states she can walk about 50 yards before having to take a ten minute rest. (Tr. 504).  Her pain causes her to have trouble paying attention but she had no problem following written and spoken instructions. Id.  Claimant also states that she has no problem getting along with authority figures.  She experiences anxiety attacks if she

gets stressed.  She does not like to be around people who get mad or are moody.  She likes to have a plan if changes are to occur. She also wears eyeglasses.  (Tr. 505).

In December of 2021, Claimant was attended by Dr. Shon Cook where she exhibited full strength in her arms and legs.  (Tr. 1012).  After carpal tunnel release surgery, Claimant was able to peel and cut potatoes without difficulty, sew, and carry a gallon of milk with some tenderness.  (Tr 1009-10).

The latest medical record from February of 2022 indicate Claimant had "no acute process of the lumbar spine; minimal degenerative disease in the lower lumbar spine with minimal neural foraminal stenosis in the right neural foramen at L4-L5; minimal grad 1anterolistthese of L5 on S1 without central canal or neural foraminal stenosis." (Tr. 961).  While Claimant reported lumbar tenderness, her lower extremity testing was largely normal with a normal gait.  (Tr. 960).  Medication helped her pain levels, increase her activities of daily living and increase her overall functional status. (Tr. 962, 980).

In May of 2022, Claimant showed normal strength in her legs, no joint tenderness, deformity, or swelling.  (Tr. 1108-10, 1114-15, 1119, 1132-34, 1177-79).  She planned to engage in activities

such as fishing and camping and travel to Arkansas to dig for diamonds. (Tr. 1098).

The ALJ engaged in a detailed recitation of the medical record in the decision. (Tr. 36-41). He reflected the consistency or inconsistency of Claimant's subjective claims of limitation with the particular evidence or medical expert being discussed, including the opinions of Drs. Stephen Andrade and William Spence which were consistent with the ALJ's RFC. (Tr. 38).

While Claimant criticizes the ALJ for not proceeding through the factors contained in 20 C.F.R. § 404.1529, the same information and consideration is contained within the ALJ's opinion without the formalistic recitation urged by Claimant. Claimant challenges that the admonition against formalistic factor-by-factor requirements but nevertheless the case authority does not require the rigidity Claimant demands. The ALJ complied with the spirit of Soc. Sec. R. 16-3p and the new regulations and his findings in evaluating Claimant's subjective statements are supported by substantial evidence.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

this Court finds, in accordance with the fourth sentence of 42
U.S.C. § 405(g), the ruling of the Commissioner of Social Security
Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of March, 2024.

_____

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE